CRAIG B. FRIEDBERG, ESQ.
Nevada Bar No. 4606
LAW OFFICES OF CRAIG B. FRIEDBERG, ESQ.
4760 S. Pecos Road, Suite 103
Las Vegas, Nevada 89121
Phone: (702) 435-7968
Fax:    1-702-825-8071
Email: attcbf@cox.net

*Attorney for Plaintiff Blake Cooley and the Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| BLAKE COOLEY, individually and on behalf of all others similarly situated, | Case No.: 2:19-cv-00653 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| MSC MERCHANT SERVICE CENTER LLC | |
| Defendant. | |

Plaintiff Blake Cooley (hereinafter "Plaintiff"), by his undersigned counsel, files this class action complaint against MSC Merchant Service Center LLC ("MSC Merchant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities (collectively "MSC Merchant") and alleges as follows:

## I.   INTRODUCTION

1.   *Nature of Action*.  Plaintiff Blake Cooley ("Plaintiff"), individually and as class representative for all others similarly situated, brings this action against MSC Merchant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA").

## II.   PARTIES

2.   Plaintiff Blake Cooley is a resident of Nevada and this District.

3.   Defendant MSC Merchant has its principal place of business in Henderson, NV with a registered agent of Legal Inc. Corporate Services Inc., 1810 E. Sahara Ave., Suite 215, Las Vegas, NV 89104.

### III.  JURISDICTION AND VENUE

4. *Subject Matter Jurisdiction.*  This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

5. *Personal Jurisdiction.*  This Court has personal jurisdiction over MSC Merchant because it has submitted to Nevada jurisdiction by doing business in this state, and a substantial part of the wrongful acts alleged in this Complaint were committed into Nevada. Furthermore, MSC Merchant has its principal place of business in this state.

6. *Venue.*  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, whereas the telemarketing calls that are the subject of this Complaint were made into this District.

### IV.  THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8. The TCPA makes it unlawful to initiate any telephone call using an automatic telephone dialing system to any cellular telephone line. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

9. In 2013, the FCC required prior express written consent for all autodialed telemarketing calls ("robocalls"). Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

10. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

11. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 165 (2003).

*The Growing Problem of Automated Telemarketing*

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

13. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

14. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national do-not-call-registry-data-book-dnc.

15. The New York Times recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

16. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

### V. FACTUAL ALLEGATIONS

**A. Factual Allegations Regarding MSC Merchant**

17. MSC Merchant is a payment processor for businesses.

18. One of MSC Merchant's strategies for dealer marketing involves the use of autodialers to solicit business.

19. Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

20. Instead they are "cold calls" and utilize an autodialer because they are transmitted en masse.

21. Unfortunately, this system, while efficient for MSC Merchant, comes at the expense of the call recipients' privacy, and is exactly the kind of telemarketing that the TCPA was passed to prevent.

**B. Factual Allegations Regarding Plaintiff**

22. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23. Mr. Cooley's telephone number, 714-330-XXXX, is registered to a cellular

telephone service.

24. Mr. Cooley has also placed this telephone number on the National Do Not Call Registry.

25. On January 31, 2019, the Plaintiff received a call from Defendant.

26. There was a distinct click and a pause when the Plaintiff answered the phone, indicating the call was made by an ATDS.

27. This click and pause is a telltale sign of a predictive dialer.

28. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

29. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

30. A predictive dialer is an ATDS as that term is defined by the TCPA.

31. Because of the predictive dialer, Mr. Cooley was greeted with dead air for the call and then finally a live person came on the line.

32. Mr. Cooley was then asked a series of questions by a representative of the Defendant and then transferred to an "Audrey".

33. Confirming the identity of the caller, the Plaintiff received an e-mail from "audrey@mscmerchant.com" promoting the Defendant's goods and services.

34. Plaintiff did not provide his prior express written consent to receive autodialed telemarketing calls on his telephone from, or on behalf of, MSC Merchant.

35. Plaintiff's privacy has been violated by the above-described calls from, or on behalf of, MSC Merchant, and they constitute a nuisance as they are annoying and harassing.

36. MSC Merchant is responsible for making the above-described calls.

37. Plaintiff and all members of the Class, defined below, have been harmed by the acts of MSC Merchant because their privacy has been violated, they were subjected to annoying and harassing calls that constitute a nuisance, and they were invasive of

their privacy. The calls also occupied Plaintiff's telephone line from legitimate communication.

## VI.   CLASS ACTION ALLEGATIONS

38.   *Class Definition.*  Pursuant to FRCP 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of the national Class defined as follows:

> All persons to whom:  (a) MSC Merchant and/or a third party acting on MSC Merchant's behalf, made one or more non-emergency telephone calls; (b) using an automatic telephone dialing system; (c) to their cellular telephone number; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

Hereinafter referred to as the "Class."

39.   *Numerosity.*  The Class is so numerous that joinder of all members is impracticable. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

40.   *Commonality.*  There are numerous questions of law and fact common to Plaintiff and members of the Class.  These common questions of law and fact include, but are not limited to, the following:

    a.   Whether MSC Merchant and/or its affiliates, agents, and/or other persons or entities acting on MSC Merchant's behalf violated 47 U.S.C. § 227 by making any call, except for emergency purposes, using an automatic telephone dialing system to a cellular telephone or phone for which the call recipient is charged for the service;

    b.   Whether MSC Merchant and/or its affiliates, agents, and/or other persons or entities acting on MSC Merchant's behalf obtained prior express written consent prior to making the calls at issue;

    c.   Whether MSC Merchant and/or its affiliates, agents, and/or other persons or entities acting on MSC Merchant's behalf should be enjoined from violating the TCPA in the future.

41.   *Typicality.*  Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by MSC Merchant and are based on the same legal and remedial theories.

42. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has interests that are contrary to or that conflict with those of the proposed Class.

43. *Predominance.* The Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

44. *Superiority.* A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel the Defendant to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against the Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

45. *Injunctive and Declaratory Relief is Appropriate.* The Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis.

## VII. FIRST CLAIM FOR RELIEF

**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227)**

46. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47. The foregoing acts and omissions of MSC Merchant and/or its affiliates, agents, and/or other persons or entities acting on MSC Merchant's behalf constitute numerous and multiple violations of the TCPA, by making a call, except for emergency purposes, using an automatic telephone dialing system to a cellular telephone.

48. As a result of MSC Merchant's and/or its affiliates, agents, and/or other persons or entities acting on MSC Merchant's behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made or up to $1,500 for each telemarketing call made deemed to be a "willful or knowing" violation.

49. Plaintiff and members of the Class is also entitled to and do seek injunctive relief prohibiting MSC Merchant from using third parties to make automated outbound telemarketing calls, other than for emergency purposes.

## VIII. DEMAND FOR JURY

50. Plaintiff demands a trial by jury for all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against MSC Merchant as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining MSC Merchant from using third parties to make automated outbound telemarketing calls, other than for emergency purposes.

1  F. An award to Plaintiff and the Class of damages, as allowed by law;

2  G. An award to Plaintiff and the Class of attorneys' fees and costs, as allowed
3  by law and/or equity;

4  H. Leave to amend this Complaint to conform to the evidence presented at
5  trial; and

6  I. Orders granting such other and further relief as the Court deems
7  necessary, just, and proper.

8  RESPECTFULLY SUBMITTED AND DATED this 15th day of April 2019.

By: /s/ *Craig Friedberg*
    CRAIG B. FRIEDBERG
    *Attorney for Plaintiff Blake Cooley and the
    Proposed Class*